UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Case Number 06-20172-BC

v.                                  Honorable Thomas L. Ludington

ROBERT JAMES OCAMPO,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS FEBRUARY 15, 2006 STOP, DENYING DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE AND DENYING DEFENDANT'S MOTION FOR DISCOVERY OF VIDEOTAPE

      Defendant Robert James Ocampo, charged with seven counts of controlled substance and firearm violations in a fourth superseding indictment, previously filed a motion to suppress evidence seized during a traffic stop on February 15, 2006, a motion to suppress wiretap evidence, and a motion for discovery of a videotape in the government's possession. The Court considered the parties' submissions and conducted an evidentiary hearing on April 9, 2007. At the conclusion of the hearing, the Court adjourned the motions and requested supplemental briefing concerning the motion to suppress the February 15, 2006 stop. Specifically, the Court requested the parties to elaborate their arguments concerning whether Defendant consented to the search of his person and whether probable cause existed to search Defendant's person. The Court held a second hearing to resolve the outstanding motions on October 18, 2007.

      Defendant's motion to suppress evidence from the February 15, 2006 stop is based on the following facts. At approximately 1:00 a.m. on February 15, 2006, Michigan State Troopers pulled over Defendant in Saginaw, Michigan while he was driving a rental car. Troopers Phillip Parker and Ryan Rich testified at the April 9, 2007 hearing and recounted the events surrounding the traffic

stop. Additionally, the sequence of events that occurred during the traffic stop was recorded on a videotape from the dashboard camera in the troopers' vehicle. The tape did not record audio communications between the troopers and Defendant, only visual images.

According to Trooper Parker, Parker and Rich were on general patrol of Saginaw County. A detective lieutenant supervising a surveillance unit contacted them to "be on the lookout" for a white Lincoln Towncar with a specific license plate number, which the troopers soon encountered. According to Trooper Parker, they pulled the vehicle over after Defendant, the driver of the vehicle, failed to stop at a stop sign and was weaving in the lane.

After pulling the vehicle over to check license, registration, and proof of insurance, the troopers requested consent to search the vehicle. Both Parker and Rich testified that Defendant consented to a search of the vehicle. Trooper Parker commenced the search of the vehicle. Trooper Rich detained Defendant outside of the vehicle and frisked Defendant for dangerous items. The frisk did not reveal any weapons or contraband, though Trooper Parker felt a bulge in his pocket, that was later revealed to be a large amount of money. At that point, however, Trooper Parker did not remove anything from Defendant's person. According to both troopers, they did not place Defendant or handcuff him.

Trooper Parker searched the entire interior compartment of the vehicle and during the search he detected the odor of marijuana and marijuana smoke. He testified that during this initial search that he discovered a small amount of marijuana in the ashtray of the vehicle. Trooper Parker testified that he did not remove the marijuana at that time, but instead exited the vehicle and questioned Defendant. Trooper Parker re-initiated the vehicle search and seized the marijuana by placing it in a manilla evidence envelope that he placed on Defendant's car. Eventually, the

marijuana was lost during the search.

According to Trooper Parker's testimony, he had Defendant remove all items on his person and place them on the hood of the car after he had discovered and seized the marijuana. This included Defendant's wallet containing $8,450, a separate collection of bills totaling $2,612, and Defendant's cellular phone. Trooper Parker counted and permanently seized the money by placing it in the same envelope as the marijuana. Trooper Rich temporarily seized the cellular phone, searched the phone's data and recorded phone numbers stored on the phone. Thereafter, the troopers returned the phone to Defendant.

Defendant contends that probable cause did not exist to search his person nor did Troopers Parker or Rich obtain his consent to do so. On cross examination, Trooper Parker testified as follows:

> Q: Now, Mr. Ocampo was again searched, was he not?
> A: He was searched more thoroughly once I found the marijuana, yes.
> Q: And he was made to remove his wallet, correct?
> A: Yes.
> Q: His phone, correct?
> A: Yes.
> Q: The money that he had in his pants pocket, correct?
> A: Yes.
> Q: Keys.
> A: I'm sure, yes.
> Q: Anything that he had on him, he was told to remove and put it on the car, is that correct?
> A: Yes.

*April 9, 2007 Hearing Transcript* at 24:5-18. Trooper Rich testified that either Trooper Parker or he "requested" Defendant to empty the contents of his pockets. *Id.* at 44:23-45:1.

At the hearing, defense counsel introduced the dashboard video as evidence and questioned Trooper Rich about the events. The video showed that after initially searching the vehicle, Trooper

Parker placed Defendant back inside Defendant's car. Trooper Parker and Rich returned to their patrol car. Soon thereafter, Trooper Parker and Rich returned to Ocampo's vehicle. The video showed that Trooper Parker then conducted the second search of the vehicle while Trooper Rich searched Defendant. The video further showed that Defendant first removed all items from his pockets and a few minutes later Trooper Parker emerged from Defendant's vehicle with the evidence envelope containing the marijuana.

The traffic stop lasted slightly more than one hour. During the stop, Defendant was not placed under arrest nor was he arrested at the conclusion of the stop. The troopers seized the money and informed Defendant that a warrant would be issued for the marijuana violation. Officers never performed any field sobriety tests, despite the fact that Defendant was allegedly weaving within the traffic lane. At no time, did the troopers have a search warrant to conduct searches of the vehicle or Defendant's person.

The Fourth Amendment requires a valid warrant or a "well-delineated exception" to that requirement prior to the search of a person. *Katz v. United States*, 389 U.S. 347, 357 (1967). The party contending that an exception to the warrant requirement existed has the burden to demonstrate that the exception existed. *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

The government contends that the warrantless search was valid because Defendant consented to the search of his vehicle and his person.[1] Consent is a valid exception to the warrant requirement if freely and voluntarily given, as summarized by the Sixth Circuit:

> While the Fourth Amendment protects citizens against unreasonable searches and seizures, a search is not unreasonable if a person with a privacy interest in the

---

[1] The government conceded that the search incident to arrest exception to the warrant requirement does not apply in the instant case. See e.g. *Chimel v. California*, 395 U.S. 752 (1969). The government's contention was supported by the testimony of both troopers that Defendant was never placed under arrest.

> item to be searched gives free and voluntary consent. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Kelly*, 913 F.2d 261, 265 (6th Cir.1990). The government bears the burden of proving, through "clear and positive testimony" that the consent to search was given voluntarily. See *Bustamonte*, 412 U.S. at 248, 93 S.Ct. 2041; *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir.1998); *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir.), cert. denied, 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). Consent is voluntary when it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977).

*United States v. Ivey*, 165 F.3d 397 (6th Cir. 1998). Thus, the government must demonstrate that Defendant gave consent specific to the search of his person.

The government concedes that it did not have a valid warrant to search either the vehicle or Defendant's person. The Court is convinced by the troopers' testimony that Defendant consented to the vehicle search, but is not satisfied by the evidence, however, that Defendant consented to the search of his person. The government failed to meet its burden through "clear and positive" testimony that Defendant gave "unequivocal, specific and intelligent" consent. Trooper Rich was unable to recall which trooper acquired Defendant's consent. Trooper Parker agreed with defense counsel's statement that the trooper told Defendant to remove his pockets' contents. Even considering Trooper Rich's testimony, that the troopers "requested" Defendant to empty his pockets, the Court does not find that Defendant freely and voluntarily consented. The trooper's "request" was a directive. Thus, the government has not met its burden that it obtained consent and the evidence seized from the traffic stop should be suppressed.

Alternatively, the government contended that the troopers had probable cause to search Defendant's person after they discovered the marijuana in the his vehicle. The government relied on *Maryland v. Pringle*, 540 U.S. 366, 368-374 (2003) for the proposition that a vehicle search of the car that yields narcotics establishes probable cause to arrest and search the occupants.

The facts do not indicate that the troopers had probable cause to search Defendant at the time that they conducted the search of his person. The initial frisk of Defendant did not yield obvious contraband. Trooper Parker testified that he recalled discovering the marijuana during the first vehicle search and conducted the second frisk after removing the marijuana from the car. When the video was reviewed, however, he acknowledged that Defendant was placed in his car after the first frisk and vehicle search. Then the troopers removed Defendant from the car and conducted the second round of searches. One trooper searched the vehicle, while the other trooper searched Defendant's person. Defense counsel's examination of Trooper Parker concerning the video clearly demonstrated that the events occurred in that sequence.

> Q: And Mr. Ocampo was again removed from the vehicle, correct?
> A: Right.
> Q: And you again entered the vehicle, is that correct?
> A: Yes.
> Q: And in the video you can see the items are being removed from Mr. Ocampo's person and placed on the hood of the vehicle, is that correct?
> A: Yes, sir.
> Q: And you were still inside the vehicle so - - I'm correct that you are the one inside the vehicle and your partner is searching Mr. Ocampo's person?
> A: Yes.
> Q: Is that correct?
> A: Yes, sir,
> Q: You are continuing to search the vehicle at about 1:26:30, is that correct?
> A: Yes.
> Q: And you leave the vehicle at about 1:27:30, is that correct?
> A: Yes, sir.
> Q: You're carrying something at this point, is that correct?
> A: That's the envelope I referred to earlier.
> Q: And that is when the marijuana is removed - - or the alleged marijuana is removed from the vehicle, is that correct?
> A: Yes, sir.

*April 9, 2007 Hearing Transcript* at 37:19-38:17. As such, the troopers did not have probable cause at the time of the search of Defendant's person.

Next, Defendant moved to suppress wiretap evidence gathered from the surveillance of co-

defendant Kip Perry's home telephone contending that the application and order are inadequate. The government contends that Defendant does not have standing to challenge the surveillance because Defendant is not an "aggrieved person" as defined in the Wire and Electronic Communications Interception of Oral Communications Act. 18 U.S.C. § 2510(11) (2002). Under the act, an aggrieved person "means a person who was a party to any intercepted wire, oral, or electronic transfer communication or a person against whom the interception was directed." *Id.* "Congress did not intend to confer standing to object to electronic surveillance to anyone other than those whose conversations were overheard and those whose premises were subjected to electronic surveillance." *United States v. Giacalone*, 455 F.Supp. 26, 41 (E.D. Mich. 1977).

Defendant asserts that the he was "a person against whom the interception was directed." The government relies on the original application, in which, Defendant is not named as a target of the intercept. In the application for the extension, Defendant was only named as a member of the conspiracy, not a target. Finally, the government contends that Defendant was never actually intercepted by the wiretap and Defendant has not offered any evidence to the contrary. Thus, Defendant does not have standing to challenge the application and the motion should be denied.

Finally, Defendant brought a motion for discovery of a videotape that documented the police search of the residence at 410 Sweet Street and the time immediately preceding the search. The video tape was taken by a neighbor of that residence and turned over to the police during, or shortly after, the raid. Defendant moved under FED. R. CRIM. P. 16(a)(1)(E) for the government to provide a copy of the videotape.

The government contends that the videotape has been misplaced and that it is unable to locate the videotape. The government asserts that despite substantial efforts to locate tapes, it was

unable to do so. The Court finds that the tapes location is unknown, and that Defendant's motion should be denied. The question of whether a jury instruction is appropriate will be taken up during trial.

Accordingly, it is **ORDERED** that Defendant's motion to suppress evidence seized at the February 15, 2006 stop [dkt # 79] is **GRANTED**. The evidence seized from Defendant's person, including the money on his person and the information gathered from Defendant's cellular phone, shall be excluded at trial.

It is further **ORDERED** that Defendant's motion to suppress wiretap evidence [dkt # 85] is **DENIED.**

It is further **ORDERED** that Defendant's motion for discovery of the videotape [dkt # 80] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 1, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 1, 2007

s/Tracy A. Jacobs
TRACY A. JACOBS